## Lawson, Sheriff, *vs.* Johnson & Ashley.

An officer, who arrested a person charged with a criminal offence by virtue of a writ of capias, does not thence derive any authority to serve on, and take possession of, any of his property; nor does the law presume any such authority *aliunde*.

The statutory provision, that all the property of a person charged with crime shall be bound, from time of arrest or indictment found, for payment of all fines and costs, creates a lien in favor of the State, on all his property, wheresoever it may be within the limits of the State, which binds it, not only in the hands of the accused, but of any person in possession from that time until discharge of the accused, or payment of fines and costs.

But this does not confiscate the property, or divest the accused of the possession and use of it during the prosecution; nor give the officer any right to detain it.

Where a sheriff obtains possession of money or property belonging to any person, he may legally levy upon it an execution which comes to his hands against that person, notwithstanding the sheriff's original possession was without authority of law.

If an officer levies an execution against A. on moneys in his hands, as the property of A., which really belong to B., the latter cannot procure the delivery thereof to himself, by a summary proceeding on a motion. The statute prescribes, in such case, a trial of the right of property by a jury.

If an officer receives money or property supposed to belong to a person charged with crime, under the belief that he is entitled to detain it, and afterwards levies upon it an execution against that person; as he has no possession by legal authority, up to the time of levy, but to that time held it merely as the bailee of those who placed it in his charge, he is in no way amenable to the Court of which he is an officer, in a summary manner, for any course he takes regarding it.

It is only in cases where the officer acts in obedience to, or by virtue of, some order, authority, or process of the Court in which the proceeding is instituted, that he is liable to be called on or proceeded against in a summary manner; and even in these cases, he will be coerced, not by judgment, but by attachment.

This was an anomalous proceeding against the sheriff of the county of Pulaski, determined in the Pulaski Circuit Court, in December, 1842, before the Hon. John J. Clendenin, one of the circuit judges. On the 16th day of November, 1842, one Ira B. Whitmore exhibited, in the Circuit Court of Pulaski county, his petition, signed "Johnson & Ashley, atty. for Whitmore," representing, in substance, that, on the 5th day of October, 1842, a warrant was issued by H. F. Shaw, a justice of the peace of Big Rock township, county of Pulaski, directed to the constable of said township, to take the body of Ira B. Whitmore, on the complaint of the State of Arkansas; that, on the trial of the complainant before three justices, on the 10th day of October, 1842, they committed him for further trial before the Circuit Court, on charges of counterfeiting, of having and concealing instru-

Lawson, Sheriff, *vs.* Johnson & Ashley.

ments for the making and counterfeiting of gold and silver coin, and for making counterfeiting instruments; that, after his arrest, and before his trial, his house was searched, and the sum of $148 in gold and silver, and $250 in notes of the banks of the State of Arkansas, and also one silver and two gold watches, together with a small lot of corporation notes of the city of Little Rock, the property of Whitmore, were taken in possession by the officer, and placed by him under the control of the justices; that the gold, silver, bank notes, and corporation tickets, were genuine, as proved on the trial; and that the watches were bona fide the property of Whitmore; that the justices had placed the property in the hands of the sheriff of the county, subject to the order of the Circuit Court; that the property was taken out of his possession, and detained from him contrary to law; and that, in consequence, his family had been deprived of the immediate means of support, and he of the means of paying his counsel for defending him against the charges: wherefore, he moved the Court for an order requiring the sheriff to *return* the property so taken and detained from him, to *E. L. Johnson* and *Chester Ashley*, his attorneys.

The record of the 22d day of the same month contains an entry headed thus: " *The State of Arkansas vs. Ira B. Whitmore, sundry charges,*" which shows the appearance of the State, as well as of Whitmore, by their respective attorneys; and that, on the motion of the latter, " upon sufficient cause shown," as is stated in the record, the Court ordered the sheriff to pay over to E. L. Johnson, the attorney of Whitmore, " the sum of fifty dollars of Arkansas bank notes, of the property of the said Whitmore, in his hands, to be by said E. L. Johnson applied to the support of the family of said Whitmore;" and made a further order that the residue of the property and money of Whitmore, then in the sheriff's hands, remain there until the further order of the Court. On the 26th day of the same month, the same parties again appeared in Court by their respective attorneys; and Whitmore, by his attorney, moved " the Court to order the sheriff to deliver him certain money and property which, he alleges, is in the hands of the sheriff;" which motion, as the record states, was resisted by the attorney for the State, and by consent submitted to the Court. On the 2d day of December, 1842, the same parties appeared again

in Court; and the Court, being sufficiently advised concerning "the motion of said Whitmore for an order requiring the sheriff to deliver over to E. L. Johnson, Esq., and Chester Ashley, Esq.," "ordered, that the sheriff *pay over* to said E. L. Johnson and Chester Ashley the money and property in his hands *belonging to said Whitmore*, or show cause to the contrary on Monday next."

On the 5th day of December, the sheriff, by leave of the Court, filed his "report in this case;" and on the 6th, the Court, on the motion of Whitmore, "ordered that he have leave to file the order of said Whitmore in favor of said E. L. Johnson and Chester Ashley, dated October 14th, 1842;" and also, Whitmore's affidavit, then made in open Court, which were filed; and, on motion, leave was granted the sheriff to amend his response by filing a new one next morning. The order so filed by leave of the Court was as follows: " The honorable justices Shaw, Smith, and King, will please deliver the money, watches, and effects belonging to me, which were taken from my house under a search warrant, and now in your possession, to E. L. Johnson and Chester Ashley. Respectfully, yours, &c., *I. B. Whitmore*." Whitmore, in his affidavit, stated that he had, on the 14th day of October, 1842, the date of the order to Johnson and Ashley, transferred to them all his right to the money, property, and effects therein mentioned, "in consideration of their services rendered, and to be rendered, as attorneys at law, in defending him from divers criminal charges, on which he was, at the time last aforesaid, in custody of the law." On the 7th of December, the same parties appeared, and, on motion, time was given the sheriff until the next day to fill the blanks in his amended response to be filed in the case; and, on the 8th, the same parties appeared again in Court, and " on motion and by consent" it was ordered by the Court, that the title of the case be changed to " *Euclid L. Johnson* and *Chester Ashley* against *James Lawson, jun., Sheriff of Pulaski county*—motion for delivery of money and property in the hands of the sheriff."

The record also shows that Lawson appeared in Court on the 8th, and, by leave of the Court, filed his amended response, showing the arrest of Whitmore on the 5th October, 1842, his commitment to the jail of the county in the custody of Lawson, as sheriff and jailer, to

Lawson, Sheriff, *vs.* Johnson & Ashley.

answer the State " to the charges of having and keeping in his possession, and concealing, and of making divers instruments for counterfeiting the gold and silver coin current in the State of Arkansas by law and usage, and such other matters as should be there alleged against him;" that, at an adjourned term of the Circuit Court of the county, held on the 2d Monday of November, 1842, a special grand jury was empannelled, which returned into Court six bills of indictment against Whitmore, four of which relate to the coin circulating in this State by law or usage, and two to the forging of the notes of the corporation of the city of Little Rock; all of which are referred to and made part of the response; that, after the examination and commitment of Whitmore by the court of examination, consisting of justices of the peace, $147 50 of gold and silver coin of Whitmore, then in custody of the court of examination, and which was the same money and effects prayed to be paid over to *Johnson* and *Ashley,* came to his custody and safe-keeping, to be held by him as sheriff, subject to the lien of the State for the payment of all fines and costs, in the event of the conviction of Whitmore upon any one or more of the charges and indictments so made and presented; that he held the moneys and effects by virtue of the order of the court of examination, based upon the 202*d section of the 45th chapter of the Rev. St. Ark.,* for the payment of fines and costs upon the conviction of Whitmore; and also showing that, on the 29th of September, 1841, one Joseph R. Bettison, in Pulaski Circuit Court, recovered against Whitmore $225 debt, and $16 10 damages, with $16 55 costs; that execution issued thereon, returnable to the last March term. A delivery bond was given for the property levied on, and forfeited, except as to $285 in Arkansas bank notes, which, by agreement between Whitmore or his security, and the attorney of Bettison, were taken at what they were selling for at that term; that the execution not being returned fully satisfied, an alias issued on the 17th day of November, 1842, which came to the hands of Lawson, as sheriff, at ten o'clock A. M., on the same day; that he levied the same on $148 50 "which were of the money, goods, and chattels of the said Ira B. Whitmore at the time of his arrest, and held the property subject, first, to the lien of the State, and then to the execution. And he therefore submitted to the Court whether he was

not entitled and required by law to keep the property so levied on subject to the lien of the State, and also to satisfy the execution, and prayed to be discharged.

Johnson and Ashley, on the hearing of the rule and response, as appears from a bill of exceptions purporting to be made part of the record, read the affidavit and order of Whitmore, which the record states to have been all of the evidence adduced; and thereupon the Court made the rule against Lawson absolute, and entered upon the record the following judgment: "Therefore, on motion, it is by the Court ordered and considered that said sheriff deliver over to said Euclid L. Johnson and Chester Ashley the money and property in his hands in the said amended response specified; and that said Euclid L. Johnson and Chester Ashley recover against said Lawson their costs in this behalf expended." From this judgment, Lawson appealed.

*By the Court,* RINGO, C. J.    The record of this most unique, extraordinary and unprecedented proceeding, exhibits such a multiplicity of inconsistencies, as are rarely to be seen in the history of judicial proceedings, and should never be suffered to find a place in judicial records.    The whole proceeding appears to be based upon the petition of Whitmore, representing that certain moneys, bank notes, personal property, and Corporation notes of the city of Little Rock, belonging to him, had been unlawfully seized, and taken from his house and possession, by a certain constable, who had placed the same under the control of certain justices of the peace, who had placed the same in the hands of the appellant as sheriff of Pulaski county, subject to the order of the Circuit Court of said county, and that he unlawfully detains the same; and praying an order to said sheriff to *return* the property so taken from him to *E. L. Johnson and Chester Ashley, his attorneys.*    This petition is signed "Johnson & Ashley, atty's. for Whitmore," and was filed in court on the 16th day of Nov. 1842.    On the 6th of December next ensuing, Whitmore appeared in court by attorney, and obtained an order of the court granting him leave to file his order in favor of said Johnson and Ashley, dated October 14th, 1842, and also his affidavit, then made in open court, stating among other things, that he had on the 14th day of October,

1842, aforesaid, transferred all his right to the property mentioned in said order, to said Johnson and Ashley, in consideration of certain specified services by them rendered and to be rendered for him. Previous to the filing of said order and affidavit, to wit, on 22d Nov. 1842, the court made an order on the sheriff to pay over to E. L. Johnson, fifty dollars of Arkansas bank notes, "of the property of the said Whitmore," in his hands, *to be applied by Johnson, to the support of Whitmore's family;* and afterwards, on the 2d day of December, made a further order, that said sheriff "pay over to said E. L. Johnson and Chester Ashley, the money and property in his hands, *belonging* to said Whitmore, or show cause to the contrary on Monday next."

The money and property were not paid over according to this order, and the sheriff in obedience to the rule against him, showed cause, and by his amended response thereto, made on the 8th Dec., after the order and affidavit aforesaid were filed, and the title or style of the proceeding changed by consent of all the parties concerned, and with the assent of the court, so as to represent the appellees as plaintiffs, and the appellant as defendant, stated such facts as showed that certain criminal prosecutions against said Whitmore, were then pending in said court, and that the money, property, bank and corporation notes aforesaid were the property of said Whitmore, at the time of his arrest and commitment on said charges, and immediately upon his arrest, was bound by law for all such fines, penalties and costs of prosecution as should be subsequently adjudged against him in any of the said prosecutions; and therefore he insisted, that he was clothed with a legal right to keep and retain the same in his possession, to answer such fines, penalties and costs: and also showed that, as sheriff of said county, there was in his hands a valid and unsatisfied execution against the property of Whitmore, which had been placed in his hands to be executed on the 17th day of November, 1842, and that he levied on said execution the said $148 50; and therefore he alleged he was not only authorized by law to hold and in his possession said money and property, but was bound by law to do so.

The facts thus presented, show that it was conceded by all concerned, that the money, notes and property in question, belonged to

Whitmore, on the 5th day of October, 1842, when he was arrested at the suit of the State, on criminal charges preferred against him, and that they were taken from his house and possession, by the constable or officer who made the arrest, either at the time of making it, or subsequently. But they do not, in our opinion, show any legal authority in the constable to seize, or take into his possession, and detain that or any other property of Whitmore, for any purpose whatever. For it does not appear that he had any warrant or authority whatever, except a writ of capias, commanding him to arrest Whitmore and take his body before some magistrate authorized to inquire into the charges preferred, and commit or discharge him, but not conferring any authority whatever, to take possession of, and detain his property; nor does the law presume the existence of such authority : consequently the original seizure of the property by the constable, for aught that appears in this proceeding, was tortious, and his possession thereof unlawful. But the appellant insists that his possession of the property, is justified by the 202d section of the 45th chapter of the Revised Statutes of this State, which declares, that, "The property, both real and personal, of any person charged with a criminal offence, shall be bound from the time of his arrest, or the finding of an indictment against him, (whichever shall first happen,) for the payment of all fines and costs which he may be adjudged to pay." This provision of law, we have no doubt, creates a lien in favor of the State, on all of the property of a person charged with a criminal offence, wheresoever it may be within the limits of the State, which attaches upon and binds it, not only in the hands of the accused, but also in the hands of any other person who shall, in any manner, possess or hold it, from the time of the arrest or indictment found, as mentioned in the Statute, until the accused is discharged from the prosecution, or such fines and costs, as shall be adjudged against him, are paid. But it surely was not the design of the law to confiscate the property of the accused, or to divest him of the possession and use of it pending the prosecution. For, even after conviction, no more of it can be legally seized, than will be sufficient to pay the fines and costs adjudged against the convict, and that only upon an execution or some other legal process or order issued for that purpose. We are therefore,

clearly of the opinion, that the sheriff could derive no authority whatever, simply from the provisions of the Statute above quoted, without any legal process, or order therefor, to detain the property in question from the legal owner, or person lawfully entitled to the possesion thereof.

But a portion of it, at least, appears to have been levied on by the appellant as sheriff of Pulaski county, by virtue of an execution against Whitmore, which came to his hands to be executed, pending Whitmore's application for an order upon him to deliver the property to Johnson and Ashley, his attorneys, but before it was made, or any rule entered against him to show cause why it should not be so delivered. That the money, bank notes and property were liable to seizure by virtue of the execution, if they remained the property of Whitmore, when the execution against him came to the hands of the officer to be executed, there can, in our opinion, be but little doubt ; and if they were subject to the execution, the legal right of possession in so much thereof as was levied on the execution, vested in the sheriff immediately upon the levy being made, notwithstanding the prior lien of the State. But if they were not *then* the property of Whitmore, the defendant in the execution, the sheriff of course derived no authority from the execution to take or retain possession of them. Yet, admitting such to have been the case, we are still unable to discover any principle of law or rule of practice, which would authorize the claimant or legal owner of the property to assert his right, and recover either the specific chattels, or their value in this summary manner, by adopting a form of proceeding in which the parties would necessarily be deprived of the right of a trial by jury; and some of those immediately interested in the disposition of the property, be entirely excluded from any participation in the controversy, notwithstanding their prima facie legal rights constitute the principal, though not exclusive subject of investigation and adjudication: which is contrary to every principle of law. But there are other reasons why the course adopted in this case, to obtain the possession of the property in question, cannot receive the sanction of this Court. One is, that the law, after the sheriff had levied it, or a portion of it, at least, on the execution against Whitmore, prescribes a different mode of proceeding to

ascertain the right of property in chattels levied on an execution, where they are claimed by any person other than the defendant in the execution, that is, by a jury to be summoned by the sheriff for that purpose, after receiving from such claimant a notice in writing of his claim, and giving to the plaintiff in execution, or his attorney, at least five days notice of the time and place of taking such inquisition. *Rev. St. Ark. p.* 378, *ch.* 60, *sec.* 29, 30, 31, 32, 33. Another reason is, that the sheriff had no official possession of these chattels, until they were levied on the execution; or, in other words, he had not the possession of them by legal authority, but held them merely as the naked bailee of those who had placed them in his charge, and therefore as he did not hold them under the authority, or process of the Court, or as its officer, he was not in any way amenable to the Court in this summary manner for any course of conduct which he may have thought proper to adopt in respect to them, any more than a private citizen would have been, if they had been in like manner placed in his hands by the examining court. Besides, where any officer is called upon by rule to show cause in relation to any act done or omitted in the discharge of his official duty, the matter must generally be determined upon such facts as are shown when the rule is made, and such as appear in his answer, the truth of which, in general, cannot be controverted; and we think it may be safely stated as a general rule, that it is only in cases where the officer acts in obedience to, or by virtue of some order, authority or process of the court, in which the proceeding is instituted, that he is liable to be called upon, or proceeded against in this summary manner, and in such cases the officer will be coerced to discharge his duty, not by means of an ordinary judgment and execution, but by attachment.

But if the jurisdiction and power of the Circuit Court, to proceed in this summary manner to try and determine the legal title and right of possession to the property in question, and award judgment and execution in favor of the successful claimant, was admitted, still the right of the appellees to the property, simply upon the facts shown by this record, would be exceedingly questionable; for it must be remembered that they, as the attorneys of Whitmore, on the 16th day of November, 1842, sign and present his petition, asserting that the

Lawson, Sheriff, *vs.* Johnson & Ashley.

title to the property was then in him. This they of course cannot be presumed to have done in ignorance of their own previously acquired right to it, if it had been in fact transferred to them *bona fide*, as stated in the affidavit of Whitmore, made on the 6th day of December following, and if his order to them bearing date on the said 16th day of October, for said property, had in fact been in their possession, previously to and at the time of exhibiting said petition; besides which the record shows further that, on the motion of Johnson one of the appellees, made in this case on the 22d day of November, 1842, "on behalf of the said Whitmore," the sheriff was ordered "to pay over to the said E. L. Johnson the sum of fifty dollars of Arkansas Bank notes *of the property of the said Whitmore in his hands to be by said E. L. Johnson applied to the support of the family of said Whitmore*," and so far as the record shows the facts, the appellees continued to assert in open court, in this very proceeding, the right of Whitmore to the money and property in question, until the said 6th day of December, when they filed the order of Whitmore in their favor, dated as above stated, together with his affidavit then made in open court; or, more correctly speaking, they were filed on the motion of Whitmore, who was then personally present in court, by his attorney, which is the first notice of their claim to the property to be found in the record: nor does it appear that they even then attempted to assert their own claim, or right of property until the 8th day of December, when the style of the case was so changed as to make the appellees appear as the plaintiffs and claimants of the property, although one intermediate order was made in the case between the said 6th and 8th days of December. We do not however consider ourselves called upon to express any opinion as to the right of property or to determine whether it was or was not subject to the execution in the hands of the sheriff, and we have alluded to it for the purpose solely of showing more clearly, not only that the appellees had no legal right to assert their claim to it in the manner here attempted, but also the error of the court in entertaining their application, and proceeding in this summary manner to adjudicate and determine the conflicting claims of the respective parties to the property, and pronounce judgment upon the premises as it appears to have done in this case.

23

Lawson, Sheriff, *vs.* Johnson & Ashley.

We have therefore, upon a careful examination and consideration of the whole case, come to the conclusion that the Circuit Court, upon the facts shown, had no jurisdiction of the appellant, or of the money, notes and property in his possession, which constitute the subject matter of the controversy, to proceed to any adjudication in respect thereof in a summary manner by rule of Court, against a person not acting in the premises under and by virtue of its authority, order or process; and that in assuming such jurisdiction thereof, that Court unquestionably erred. Judgment reversed, and Court instructed to discharge the sheriff from all orders and rules entered against him.